**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL EVANS** | : | |
| **12 New Haven Court** | : | |
| **Harrison, Ohio 45030** | : | |
| | : | |
| **and** | : | **CASE NO. 1:18-cv-33** |
| | : | |
| **DIANE MASSIHNIA** | : | |
| **4751 Gale Way** | : | |
| **Groveport, Ohio 43125** | : | _____, Judge |
| | : | |
| **-vs-** | : | |
| | : | |
| **COLERAIN RV, dba Colerain Trailer Center, Inc.;** | : | |
| **Colerain Trailer Center, LLC; Colerain Trailer Center;** | : | |
| **Colerain RV; CTC Company; Family RV; Colerain** | : | |
| **Family RV; Family RV Group; Colerain RV –** | : | |
| **Cincinnati Ohio; Colerain RV – Dayton Ohio;** | : | |
| **Colerain RV – Columbus; Colerain RV – Indianapolis;** | : | |
| **Colerain RV of Indianapolis, LLC; Colerain RV** | : | |
| **of Indianapolis, Inc.; Colerain Holdings, LLC;** | : | |
| **Colerain Holdings; Midwest RV** | : | |
| | : | |
| **3491 Struble Road** | : | |
| **Cincinnati, Ohio 45251** | : | |
| | : | |
| **Defendant.** | : | |

---

**COMPLAINT AND JURY DEMAND**

---

To the best of their information and belief, Plaintiffs, Michael Evans and Diane Massihnia, allege as follows:

**I.   PRELIMINARY STATEMENT**

1.    Michael Evans and Diane Massihnia, acting individually on their own behalf and on

behalf of all others similarly situated, bring this Complaint and Jury Demand against Defendant, Colerain RV, dba Colerain Trailer Center, Inc.; Colerain Trailer Center, LLC; Colerain Trailer Center; Colerain RV; CTC Company; Family RV; Colerain Family RV; Family RV Group; Colerain RV – Cincinnati Ohio; Colerain RV – Dayton Ohio; Colerain RV – Columbus; Colerain RV – Indianapolis; Colerain RV of Indianapolis, LLC; Colerain RV of Indianapolis, Inc.; Colerain Holdings, LLC; Colerain Holdings; Midwest RV (Colerain RV).

2.      Plaintiffs, Evans and Massihnia, allege that Defendant denied their rights and the rights of others similarly situated based on the federal Fair Labor Standards Act (FLSA) and the Ohio overtime statute.  Those statutes require employers to pay their employees one and one-half their normal hourly wage for work in excess of forty hours per week.

3.      For themselves and all others similarly situated, Evans and Massihnia seek all damages provided by the those statutes including compensatory damages, punitive damages, liquidated damages, incentive fees, costs, and reasonable attorney's fees.

## II.  JURISDICTION

5.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. §§ 207 *et seq.* (FLSA).

6.      This Court has supplemental jurisdiction over Plaintiffs' Ohio Rev. Code § 4111.03 claims pursuant to 28 U.S.C. § 1367.

7.      The principal place of business for Colerain RV is in Hamilton County Ohio, Southern District of Ohio.  Venue, accordingly, is proper with this Court.

## III.  PARTIES

8.      Plaintiff, Michael Evans, is a resident of Harrison, Ohio.  Mr. Evans worked at Colerain

RV from January 2002 until June 3, 2017.  Plaintiff, Diane Massihnia, is a resident of Groveport, Ohio.  At different times between 2006 and 2016, Ms. Evans worked Colerain RV.

    a.    In Count One, Evans and Massihnia bring claims on their own behalf based on the FLSA overtime provisions.

    b.    In Count Two, Evans and Massihnia bring claims on their own behalf based on the Ohio overtime statute.

    c.    In Count Three, Plaintiffs bring an FLSA opt-in collective action on behalf of all similarly situated persons at Colerain RV.  These persons are the "Collective Plaintiffs."

    d.    In Count Four, Plaintiffs bring a Rule 23 class action based on the Ohio overtime statute on behalf of all persons similarly situated at Colerain RV.  Those persons are the "Rule 23 Class Plaintiffs."

9.    Colerain RV is a recreational vehicle (RV) dealership.

    a.    The company sells new RVs.  The company also takes used RVs as trade-ins.  For the trade-ins, the company refurbishes the RVs then sells them as used vehicles.

    b.    In addition to other operations, the company has service and parts departments. Those departments take care of service and parts for customers who purchased RVs at Colerain RV or elsewhere.

    c.    Colerain RV is a for-profit corporation with its principal place of business at 3491 Struble Road, Cincinnati, Ohio 45251. Colerain RV has at least five locations, Cincinnati, Columbus, Dayton, Indianapolis, and Lexington.

    d.    In this complaint, Plaintiffs bring their claims related to Colerain RV in four of

those five locations, Cincinnati, Columbus, Dayton, and Indianapolis. For the purposes of this lawsuit, Colerain RV is a single employer, because the four locations doing business under the names identified in this complaint have: (1) an interrelation of operations; (2) common management; (3) centralized control of labor relations; (4) common ownership. As such all entities identified as Colerain RV are "employers" within the meaning of the FLSA.

## IV.   PLAINTIFFS' STATEMENT OF INDIVIDUAL CLAIMS

***Michael Evans***

10.     Mr. Evans worked at Colerain RV from January 2002 until June 3, 2017. During that entire time, he worked at the Cincinnati location. When Mr. Evans first started at Colerain RV, he was working as a technician. Over time, Colerain promoted Mr. Evans to a senior technician/delivery specialist.

12.     As a senior technician/delivery specialist, the job for Mr. Evans included retrieving RVs from the lot and installing the hook-up equipment for travel trailers, fifth wheels, goose necks, and pop ups. In addition, Mr. Evans was responsible for installing roof vents, bathroom equipment, and television brackets. Then, once the customer arrived to pick up the RV, Mr. Evans would demonstrate features and issues, including plumbing for water, liquid propane for heat and refrigeration, hook-up and brake equipment, and maintenance for the battery. Mr. Evans generally did this type of work at a bay inside the Colerain maintenance facility.

13.     Mr. Evans also acted as a liaison between the sales and delivery departments. For instance, if a customer was scheduled to come in to pick up an RV, the sales department would let him know if the customer was going to be late. Mr. Evans would then keep the delivery

department up to date. Also, once the customer inspected the RV, Mr. Evans would notify the sales department if the unit was not prepared to his or her liking.

14. Mr. Evans' job duties can be summarized as requiring technical skills in service and parts with a large component of customer relations.

15. As for his compensation, when Mr. Evans first started at Colerain, the company paid him on an hourly basis, plus overtime. That pay system also used a "tiered" mechanism to track the efficiency of the employee's performance. Mr. Evans eventually maxed out his performance under the tiered system by efficiently performing the maximum amount of work in the minimum amount of time.

16. In 2007, as Mr. Evans became more and more efficient on the tiered system, Colerain RV put Mr. Evans on a salary basis. Under the salary system, Colerain paid Mr. Evans on a bi-weekly basis. In the years 2014 to 2017, that bi-weekly amount was $1,600, then $1,650, and finally $1,700.

17. In addition to that, Colerain paid Mr. Evans a "bonus" or "commission," based on the number of units that the company sold. In 2014, Colerain reported a bonus of approximately $4,500. In 2015, Colerain reported approximately $6,800. In 2016, Colerain reported approximately $5,500.

18. Colerain RV's salary system for Mr. Evans violated the overtime provisions of the FLSA.

19. The overtime management exemption, did not apply to Mr. Evans because he did not interview employees, select employees, set rates of pay, maintain production records, appraise employees, approve policies, determine types of materials and supplies, control inventory, or control the budget.

20.     The administrative exemption also did not apply to Mr. Evans.  That is because he did not have authority to form management policies, carry out major assignments for Colerain RV, commit the company to matters of significant financial impact, waive or deviate from policies without prior approval, negotiate on behalf of the company, plan long- or short-term business objectives, investigate matters of significance, or handle complaints.

21.     When it comes to the so-called commission or bonus, that arrangement does not provide an exemption from overtime.  The simplest explanation for that is that Colerain RV paid Mr. Evans greater than 50% of his total compensation on a basis of fixed periodic payments – $1,600, $1,650, then $1,700 on a bi-weekly basis.

22.     Mr. Evans has reasonably estimated that Colerain RV failed to pay for hundreds of hours of overtime during the relevant FLSA/Ohio look-back period.

23.     At the time that Mr. Evans left the company, Mike Sommers was the service manager; Ray Miller was general manager of the service department.

***Diane Massihnia***

24.     Diane Massihnia first worked for Colerain RV from 2002 to 2006 at the Cincinnati location.  She returned to Colerain RV in 2008.  After she returned, she worked for a time in Cincinnati and a time in Columbus/Delaware.

25.     Ms. Massihnia left the company in December 31, 2016.

26.     When Ms. Massihnia was with RV Colerain, she had two different jobs.  The first was parts representative.  In that position, she waited on customers, educated customers on products, upsold to customers, took inventory, and handled customer complaints and follow up.  She also worked on displays and dusted the area.  She organized shelves and areas of the company.

27.     Ms. Massihnia's other job was service adviser.  In that job, she took care of intake with customer work orders, wrote up concerns and complaints, informed customers of the costs, worked with the techs in maintenance, up-sold products, handled payments, handled complaints, and followed up with customers.

28.     In her two jobs at Colerain RV, Ms. Massihnia's duties can be summarized as requiring technical skills in parts and service with a large component of customer relations.

29.     Colerain RV's salary system for Ms. Massihnia violated the overtime provisions of the FLSA and Ohio overtime statutes.

30.     The overtime management exemption did not apply to Ms. Massihnia, because with minor incidental exceptions, she did not interview prospective employees, select employees, set rates of pay, maintain production records, appraise employees, approve company policies, determine product line, control inventory on a policy-making basis, or control the budget.

31.     The administrative exemption also did not apply, because again with minor incidental exceptions, Ms. Massihnia did not form management policies, carry out major assignments for the company, make major financial decisions, negotiate on a company-to-company basis on financial issues, plan long- or short-term business objectives, or investigate major issues related to the company.

32.     Colerain RV paid Ms. Massihnia a fixed salary in bi-weekly increments.  For a time, she also received a commission.  She also worked for a time on straight salary.  When she did receive a commission, that was based on calculations that were never clearly communicated by the company.  The best that the company explained it, however, the commission was based on a percentage of the sales in the department or the company as a whole.

33.    Ms. Massihnia received well over half of her income based on the fixed salary amount, not commissions.

34.    During her employment, Ms. Massihnia worked more then forty hours a week many, many times.  Colerain RV never paid her overtime.

## PLAINTIFFS' COLLECTIVE CLAIMS

35.    The persons who are eligible to opt-in the collective action are those who worked at any of the four Colerain RV locations in the statutory period prior to the time that the complaint was filed and had job requirements and pay provisions that were substantially similar to Mr. Evans and Ms. Massihnia.  These persons are the Collective Plaintiffs.

### Colerain RV is a Single Employer

36.    Colerain RV, as identified in the four locations in this complaint, amounted to a single employer for the purposes of FLSA/Ohio overtime statutes.

#### Interrelation of Operations

37.    The four locations had an interrelation of operations.

38.    For its operations generally, Colerain RV states that it has an overriding philosophy that "makes us different."  That philosophy is that: "We treat everyone like family."

39.    When considering interrelation of operations more specifically, Colerain RV's business can usefully be separated into components: inventory, parts, service, finance, trade-in, and human resources.

40.    As for inventory, Colerain RV maintains centralized listing and control of its stock of new and used RVs.  For all four locations, Colerain RV has a unified system of categorizing the RVs. The categories include Class A Gas, new/used; Class A Diesel, new/used; Class B, new/used;

– 8 –

Class C, new/used; Fifth Wheel, new/used; Travel Trailer, new/used, Toy Haulers, new/used, and Hybrid Camper, new/used.

41.    For each vehicle in the inventory, Colerain RV uses a classification system. That classification system includes a stock number, class designation, length measurement, sleeping information, slide numbering, and interior description.

42.    Colerain displays its entire inventory on one centralized website, http://www.colerainrv.com.

43.    As far as parts, Colerain RV has what it described as "[four] well stocked retail parts stores." Colerain RV further explains that its parts staff is "ready and willing to help [customers] get the parts" they need for their RV. Colerain RV further explains that its staff is trained "by our suppliers and vendors so we can provide you with knowledge on the products we carry." As a company-wide parts policy, Colerain RV tells its customers that if "we don't get the answer to your question right away, give us a little time and we can get you the answer."

44.    Besides these in-store parts, Colerain RV provides and online parts system. The company explains that for persons who cannot visit in person, that the company "can order and ship items to your door."

45.    For its parts supplies, Colerain RV provides a centralized RV Parts & Accessories Catalog.

46.    For items not found in the parts catalog, Colerain RV provides the additional services of eBay shopping and a YouTube channel for all four locations.

47.    For any questions that customers have for any of the four locations, Colerain provides a centralized Cincinnati phone number, 513-923-3600 and a single email for inquiries,

parts@colerainfamilyrv.com.

48.     Just as with inventory, Colerain RV provides a single centralized website to provide customers access to parts information at all four company locations. http://www.colerainrv.com/pages/parts.

49.     For the service component of Colerain RV's business operations, the company explains that it has "four convenient locations to service you and your RV needs."  At those locations, Colerain RV has employees identified as "RV Service Pros."  The company explains that at any of the four locations, the RV Service Pros, can "assist you and get you back on the road so you can continue your adventures!"

50.     All of this information is set out in a unified service webpage for the company, http://www.colerainrv.com/pages/colerain_service.

51.     When it comes to the financing component, Colerain RV has a company-wide set of policies and procedures for customers to apply.

52.     Colerain RV explains the advantages of financing a vehicle purchase. According to Colerain RV, when a customer customer finances a "purchase instead of liquidating assets or paying cash, you maintain your financial flexibility."  In addition, Colerain RV explains that the customer's purchase "may qualify for some of the same tax benefits as a second home or mortgage" – "remember, the RV is considered a qualified second residence as long as you designate it for each tax year."

53.     To make these arrangements, the company provides "RV Finance Specialists."  The company assures its customers that because "RV Finance Specialists know the industry, it's not uncommon to find 15 – 20 year repayment schedules to help you afford the RV of your dreams."

54.     Colerain RV even provides company-wide investment advice to customers who are considering financing an RV. The company explains that an "RV might actually cost you less in the end if you finance your purchase."  The reason is because the customer would not be "tapping your financial assets to finance your RV."  That would free the customer up to "take advantage of attractive new investment opportunities, and the earnings from those investments can potentially exceed the cost of your RV financing."

55.     Colerain RV provides all of this information on a centralized website, http://www.colerainrv.com/pages/financing.

56.     As for the trade-in component of Colerain RV business operations, the company has established unified policies and procedures.  That includes providing appraisers who can "offer you TOP DOLLAR  for your trade!"  or "buy your camper out right!"

57.     For trade-ins, Colerain RV has a company-wide electronic form for applicants to start the process. That form includes request for the customer to provide name, email address, phone number, mobile phone, and the best time to reach the customer.

58.     In addition to that, the trade-in form asks the customer to provide information about the trade-in vehicle.  That information includes class, year, manufacturer, brand, model, condition, length, mileage, purchase date, purchase price, and desired trade in value.

59.     All of this  trade-in information is located on the centralized Colerain RV website, http://www.colerainrv.com/pages/trade-in.

60.     As for human resources, Colerain RV stands by its "family"  philosophy.  Colerain RV explains to applicants that the company "opened in 1968 and is still family owned and operated."

For persons who are interested in employment with the company, Colerain RV asks: "would you like to become part of the Colerain RV family?" The company explains that it "offers competitive pay, benefits, and a great work environment."

61.     Colerain RV lists its openings for the four locations identified in this complaint on one company-wide website, http://www.colerainrv.com, using the "Careers" tab.

62.     The four locations also have a common management. The company was originally founded in 1968 by Charles and Lolly Jung.

63.     For the first 40 years of business, Colerain RV operated out of one location, Cincinnati Ohio. As its reputation and demand for products continue to grow, the company added additional locations: Dayton, 2008; Indianapolis, 2011, and Columbus, 2013.

64.     During all times relevant to the issues in this complaint, the senior management consisted of Chuck Jung, Steve Jung, and Wade Stepp. Chuck and Steve Jung are sons of founder, Charles Jung. Chuck Jung serves as the executive vice president of the company.

65.     Wade Stepp joined the company in 2001. At that time, he served as executive vice president of operations. Mr. Stepp is an equity partner in the business. His current position is president and chief operating officer. During his time at the company Mr. Stepp has helped lead revenue growth, customer service initiatives, as well as the multi-store expansion strategy that led to new Colerain locations in Dayton, Indianapolis, and Columbus.

66.     Steve Jung is the vice president of sales and marketing.

67.     These three principals run Colerain RV out of two offices in Cincinnati Ohio. Those offices are at 3491 Struble Road, Cincinnati, Ohio 45251 and 9600 Colerain Avenue, Suite 300, Cincinnati, Ohio 45251.

68.     The four Colerain RV locations also have centralized control of labor relations.   The human resource department is based in Cincinnati, Ohio at the Struble Road and Colerain Avenue addresses. The HR staff works out of those Cincinnati offices.

69.     The four Colerain RV locations have common ownership.   From 1968 until 2001, members of the Jung family were the owners of Colerain RV.

70.     In 2001, Wade Stepp became the only non-family member who is also an equity partner.

71.     From 2001 until 2016 the Jung family and Mr. Stepp were the owners of all four of the Colerain RV locations.

72.     In 2016, Kidd & Company, LLC, an investment group from Old Greenwich, Connecticut, became involved.   The purpose of bringing in the Kidd company was to recapitalize Colerain RV. With the additional capital, the company plans to continue the growth of Colerain RV by expanding to new locations.

73.     When the Kidd company became involved,  the existing owners retained a substantial equity interest in the company.

74.     Besides retaining their equity position, the existing owners continued to manage all four locations.

75.     All entities identified herein as Colerain RV are "employers" within the meaning of the FLSA.

***Similarly Situated***

76.     The Collective Plaintiffs are a group of employees who had several common features in their employment.   The employees had a great deal of customer contact. The employees also had responsibilities in the technical aspects of the company's service and parts.

77.    Mr. Evans and Ms. Massihnia were members of the group.

78.    Those job requirements are outlined in paragraphs 12-22 and 26-34 above.

79.    Colerain RV paid this group of people a fixed salary in bi-weekly increments.  Some or all of the employees in this group also received a commission.  The commission was based on a percentage of the sales in the department or the company as a whole.  The employees in this group received well over half of their income based on the fixed salary amount, not commissions.

80.    The members of this group of employees would work more than forty hours a week and straight through lunch.  The company forced the employees to work more than forty hours a week, but did not pay the employees overtime for those hours.

81.    The allegations in this complaint, including but not limited to the single-employer issue above, establish that Colerain RV did not pay overtime to this group of employees based on a single, company-wide policy established by the owners and managers of the company.

82.    In Cincinnati, at any one time, there were approximately three such employees in parts, three to four in service, including Mr. Evans.

83.    In Columbus, there was one such person in parts and one in service.

84.    In Indianapolis there was one in service and one in parts.

85.    In Dayton there also was one in service and one in parts.

86.    In all these positions, there was a great deal of turnover.  On average, each position would turn over in a year or less.

87.    Just as with Mr. Evans and Ms. Massihnia, the management exemption did not apply to this group, because, with minor incidental exceptions, members did not interview prospective

employees, select employees, set rates of pay, maintain production records, appraise employees, approve company policies, determine product line, control inventory on a policy-making basis, or control the budget.

88.     And, just as with Mr. Evans and Ms. Massihnia, the administrative exemption did not apply to this group, because, with minor incidental exceptions, the members did not form management policies, carry out major assignments for the company, make major financial decisions, negotiate on a company-to-company basis on financial issues, plan long-or-short-term business objectives, or investigate major issues related to the company.

89.     Based on these facts, Colerain RV employees who received salary with commission and who had technical skills in sales and/or service and substantial duties in customer relations, but not paid overtime, were similarly situated for the purposes of the FLSA overtime statute.

90.     Defendant should be able to readily ascertain the names and addresses of the Collective Plaintiffs.  Notice could be mailed to the Collective Plaintiffs by regular or certified United States Mail.

## PLAINTIFFS' RULE 23 OHIO CLASS CLAIMS

91.     In Count Four, Evans and Massihnia bring a federal class action based on the Ohio overtime statute.  These persons would be identified as the Rule 23 Class Members.

92.     For the Rule 23 Class Members, the job requirements and pay provisions are substantially the same as outlined in paragraphs 12-22, 26-34, and 78 above for the individual and Collective Plaintiffs.

93.     The Defendant's records should identify the numbers and identity of the persons eligible for the Rule 23 class action.

94. Defendant's records should also identify the class members' assignments, hours, positions, and pay. The Defendant should also have ready access to the names and addresses of class members so that notice may be provided as required by the federal rules.

95. For the purposes of the Rule 23 class, the Colerain RV employees are so numerous that it is impracticable to join all members. The Court and the parties would benefit by disposing of all their claims in one action. Discovery will be necessary to determine the precise amount. Nevertheless, based on the information above in paragraphs 82-86, including turnover during the applicable time period, there would be between forty and forty-five members of the Rule 23 Class.

96. Furthermore, there are common issues of law and fact that will predominate in the collective and class action claims.

97. One issue is whether the four Colerain RV locations were "employers" within the meaning of the FLSA and Ohio overtime statutes.

98. Another issue concerns the job duties Defendant assigned employees who were similarly situated to Evans and Massihnia.

99. This case will also determine whether those job duties amounted to managerial or administrative responsibilities that would make the employees exempt for the overtime statutes.

100. There will be a common factual and legal questions as to whether the job duties were non-administrative or non-managerial assignments that would entitle the employees to overtime payments.

101. There will also be a factual matter regarding similarly situated employees concerning the sort of timekeeping records Defendant kept for those employees.

102.    There is also a common factual issue to determine whether Defendant's policies and practices provided overtime payments for non-exempt employees.

103.    The ultimate factual and legal question common to all similarly situated employees will be whether Defendant paid non-exempt employees overtime as required by the law.

104.    Also for the purposes of the Rule 23 Class, Plaintiffs' claims are typical of those that would be alleged by the other class members.  The reasons are that Colerain RV used the same practice of requiring those persons to work more than forty hours in some weeks, without paying those persons overtime. Defendant's policies at all four Colerain RV locations affected class members similarly.  The class members, accordingly, had similar harm based on Ohio overtime provision.

105.    Mr. Evans and Ms. Massihnia are fairly and adequately able to protect the interests of the class members.  That is because they do not have any interests that are conflicting to the Rule 23 Class members.   Furthermore, their attorney is experienced and competent to handle FLSA individual claims, FLSA collective and Rule 23 overtime class actions, other Rule 23 class actions, and general employment litigation.

106.    For numerous reasons, a Rule 23 class action is superior to other methods for the just and efficient adjudication of these claims.

107.    First of all, in an overtime case, the amount of damages available to each potential class member is generally modest.   In contrast to the modest potential outcome, the financial commitment necessary to bring such a claim is substantial.  That makes it unlikely that all, or even most, class members would be able to vindicate their rights with separate individual claims.

108.    The corollary to that is that in a class action, this Court will be able to consider the claims

of a large number of similarly situated persons in one action. That, in turn, will eliminate unnecessary duplication of efforts by the Court, parties, and attorneys. The collective and class action claims will also reduce the risk of inconsistent outcomes for similarly situated employees.

109. A class action is superior for another reason. That reason is that all similarly situated employees at Colerain RV will be able to vindicate their rights in one consolidated action. By proceeding with the collective and class action claims, the Court will assist the parties to further the public policy goals codified in the FLSA and the Ohio overtime statutes.

110. All of these facts establish that Defendant is liable to Mr. Evans and Ms. Massihnia and all similarly situated employees for violations of federal and state overtime statutes.

### *Colerain RV's Violations were Willful*

111. To understand the willful mental state, it is helpful to consider the context in which the company built its business. Back in 1968, the original founders of Colerain RV ran their business out of a small wooden shack with an inventory of less than ten campers.

112. By 2016 the company had at least four locations with revenues exceeding 100 million a year.

113. In large part, Colerain RV built this RV empire based on its core philosophy – "We treat everyone like family."

114. Colerain RV's website is filled with customer testimonials describing the care they received from Colerain RV's employees. Those testimonials describe the employees' extensive technical knowledge in parts and service and the exhausting time the employees contributed to each sale.

115. The employees in this class contributed their time and expertise to live up to the

company's promise to "treat everyone like family."

116.    The employees in this class did so without receiving overtime pay as required by Ohio and federal law.

117.    Given that background, one of the specific reasons that the willful mental state applied to Colerain RV was because the company HR officials and management representatives attended regular training classes, seminars, conferences to keep up to date on all the latest issues related to employee relations.  As such, they were informed of the overtime requirement, but continued to violate the FLSA and Ohio statutes.

118.    Furthermore, back in 2007, the very reason that Colerain RV put Mr. Evans on salary was because the company wanted to eliminate the overtime and hourly bonus amounts that he was receiving based on the tiered compensation system.

119.    Then, in 2010 or 2011, Colerain RV even considered promoting Mr. Evans to a supervisor position.  It is likely that in such a position, Colerain could have justified paying Mr. Evans on a salary basis.  Colerain, however, never followed through with a promotion.

120.    Besides that, in 2015, Mr. Evans specifically discussed the overtime issues with Ray Miller and Mike Sommers.   At that time, both of those managers were in the process of evaluating salaries and overtime policies based on the anticipated changes in FLSA regulations. When Mr. Evans talked to Mr. Sommers about those issues, the only response he got was, "I'll get back to you."

121.    As for Ms. Massihnia, in or about 2012 or so, she approached the supervisor, Dave Smith, regarding overtime.  She showed Mr. Smith on the computer that she should be paid overtime. Smith responded by telling her that she did not qualify for overtime.  Ms. Massihnia

– 19 –

explained to Mr. Smith that the company's policy was illegal.

122.    Ms. Massihnia also approached manager, Seth Schwertfager, about overtime.  He told her that she was a "manager," so she was not entitled to overtime.  The facts establish that Ms. Massihnia never was a manager.

123.    Ms. Massihnia also mentioned to Mr. Miller that she should be paid overtime – that she was non-exempt.  He said he would check into it. He never got back to her.

124.    As a result of the efforts of Mr. Evans, Ms. Massihnia, the members of the Collective Class, the members of the Rule 23 Class, the employees built a multi-million dollar RV empire for the small group of owners, largely consisting of the Jung family – all without being paid overtime as required by Ohio and federal law.

125.    Besides being willful, Defendant's conduct was negligent, reckless, wanton, and/or intentional.

126.    Mr. Evans, Ms. Massihnia, and all similarly situated employees suffered substantial economic and non-economic harm based on Defendant's violations.

## COUNT ONE: PLAINTIFFS' FLSA CLAIM

127.    Plaintiffs incorporate by reference paragraphs 1 through 126 as if written herein.

128.    Defendant's actions violated Plaintiffs' individual rights under the FLSA, 29 U.S.C. §§ 207 *et seq.*

## COUNT TWO: PLAINTIFFS' OHIO OVERTIME CLAIM

129.    Plaintiffs incorporate by reference paragraphs 1 through 128 as if written herein.

130.    Defendant's actions violated Plaintiffs' individual rights based on Ohio overtime statute, Ohio Rev. Code § 4111.03.

## COUNT THREE: FLSA COLLECTIVE ACTION

131. Plaintiffs incorporate by reference paragraphs 1 through 130 as if written herein.

132. Defendant's actions violated the rights of the Collective Plaintiffs pursuant to FLSA, 29 U.S.C. §§ 207 *et seq.*

## COUNT FOUR: RULE 23 CLASS ACTION

133. Plaintiffs incorporate by reference paragraphs 1 through 132 as if written herein.

134. Defendant's actions violated the rights of the Rule 23 Class members based on Ohio overtime statute Ohio Rev. Code § 4111.03.

## V. DEMAND FOR RELIEF

WHEREFORE, on their own behalf and on behalf of all similarly situated employees at Colerain RV, Plaintiffs demand judgment against Defendant, Colerain RV, as follows:

1. An order granting compensatory damages for all current and future economic and non-economic damages;

2. Statutory damages, including liquidated damages;

3. Incentive fees;

4. An order granting Plaintiffs' costs and attorney's fees;

5. An order for all other legal and equitable relief to which Plaintiffs are entitled.

Respectfully submitted,


_____s/Ted L. Wills_____

TED L. WILLS (0059473)
414 Walnut Street, Suite 320
Cincinnati, Ohio 45202
Telephone: 513.721.5707
Facsimile:  1.740.240.6941
E-Mail: TedLWills@aol.com
Attorney for Plaintiffs




## JURY DEMAND

Plaintiff hereby demands that all issues of fact in the foregoing Complaint be tried to a

jury.



_ s/Ted L. Wills_____

TED L. WILLS

c:\tlw\evans.massihnia\pleading\complaint